IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EXL LABORATORIES, LLC | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 10-6282 |
| KRIS EGOLF ET AL. | : |

SURRICK, J.                                           DECEMBER 7, 2010

## MEMORANDUM

Presently before the Court is Plaintiff EXL Laboratories, LLC's Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 3) and Defendants' Brief in Opposition thereto.[1] After hearing in open court at which the Court heard arguments of counsel, Plaintiff's Motion for a Temporary Restraining Order will be granted.

## I. BACKGROUND

Plaintiff EXL Laboratories is engaged in the business of manufacturing dairy hygiene and food sanitation products and technologies. Plaintiff also provides dairy producers with milk-production operations consulting. Plaintiff primarily markets its goods and services through exclusive dealers and distributors.

Plaintiff manufactures and markets to dairy producers a product called SOLO acid

---

[1] Attached to Plaintiff's Motion are Affidavits from the following individuals: 1) Roger E. Beers, Vice President and General Manager of EXL, and outside director of Lancaster Dairy Farm Automation, Inc. ("LDFA"); 2) Dennis Milhoan, president of LDFA; and 3) Carter S. Elliot, III, employee of EXL. Attached to Defendants' Brief in Opposition are affidavits from Defendant Kris Egolf and Defendant Dale Dry.

1

detergent. SOLO, also licensed and sold under the DELTA trademark, is a high performance, single wash cycle, clean-in-place acid detergent that reduces the amount of energy and chemicals necessary to clean dairy parlors and pipelines.

Plaintiff provides its dealers with third-party incentive and rebate programs. One of Plaintiff's exclusive incentive programs involves confidential incentives provided by Land O'Lakes, Inc. ("LOL Program"). Plaintiff also provides its dealers with a unique year-end rebate program, large farm incentive program, "cost sharing/co-investment" program, and route truck incentive program ("Dealer Programs"). Plaintiff has invested a substantial amount of money in developing and marketing the LOL Program, the Dealer Programs, and SOLO/DELTA.

Plaintiff restricts its dealers access to pricing information, which includes the price Plaintiff charges its dealers for Plaintiff's products and services ("Pricing Data"). Plaintiff affixes a "confidential" stamp on its Pricing data and prohibits its dealers from disclosing the Pricing Data to third parties. Plaintiff also internally restricts access to its Pricing Data to individuals who have a designated "need to know," and by storing this information on a secure computer server that is password protected.

Lancaster Dairy Farm Automation, Inc. ("LDFA") is the exclusive dealer for Plaintiff's products in Pennsylvania. At all relevant times, Defendants Dry and Egolf were employees and directors of LDFA. As directors of LDFA, they were privy to certain confidential information with respect to Plaintiff's business. Specifically, Roger Beers, who is Plaintiff's vice president and general manager, as well as an outside director of LDFA, has on several occasions disclosed Plaintiff's confidential information to other members of the LDFA board of directors, which included Defendants. However, before disclosing such confidential information, Beers informed

2

all members of the board that the confidential information that he was divulging to them must be treated as confidential and should not be disclosed to third parties. Beers has disclosed to the LDFA Board of Directors such confidential information as the precise nature of the Dealer Programs, the LOL Program, and Plaintiff's business development plans. He has not discussed Pricing Data during any LDFA board meeting.

On October 28, 2010, Beers received an email from one of Plaintiff's employees, Carter S. Elliot, III, which informed Beers that Defendants had communicated with Bou-Matic, LLC, a competitor of Plaintiff, about Plaintiff's Dealer Programs and undisclosed information related to SOLO/DELTA. Specifically, the email advised the fact that Defendants had paid a company to assist them with the preparation of a business plan for a business to compete with Plaintiff and LDFA; that Defendants discussed with Bou-Matic the precise nature of Plaintiff's Dealer Programs; that Defendants discussed Bou-Matic's development of a product designed to compete with SOLO/DELTA, prior to Defendants' nascent company consummating a partnership with Bou-Matic; and that Defendants discussed other details of Plaintiff's LOL Program and business development plans. One of LDFA's employees, Becky Guhl, was present at meetings conducted by Defendants concerning Defendants' intentions to create a company in direct competition with LDFA. Guhl has corroborated the information contained in the October 28, 2010, email as a true and complete summary of the information communicated to her at such meetings.

On October 29, 2010, Beers and Dennis Milhoan, president of LDFA, commenced an internal investigation of the activities of Defendants. Beers found an August 19, 2010, email from Defendant Dry to Lance Reynolds, the Bou-Matic account manager, which establishes that Dry transmitted confidential Pricing Data directly to Bou-Matic without Plaintiff's authorization.

On November 2, 2010, LDFA convened a meeting of the board of directors. During the meeting, Defendants each confirmed that they presented their business plan to Bou-Matic area manager, Duane Kleve, on July 6, 2010. Defendants admitted the authenticity of the August 19, 2010, email. Dry further admitted to transmitting Plaintiff's Pricing Data to Reynolds, the Bou-Matic account manager. Dry also produced copies of notes he took at the meeting with Kleve. The notes show that Defendants disclosed Pricing Data with respect to "chlorinated cleaners and acid cleaners." At the board meeting, Beers received a copy of Defendants' business plan, which Defendants presented to prospective business partners. The business plan is premised upon a manufacturer-dealer business model that is "strikingly similar" to the relationship between Plaintiff and LDFA. Specifically, the business plan contains programs which emulate Plaintiff's LOL Program and Dealer Programs. At the conclusion of the November 2, 2010, board meeting, Milhoan terminated the employment of Defendants, effective immediately.

Plaintiff argues that the LOL Program, Dealer Program, Pricing Data, business development plans, and specifications for SOLO/DELTA are protected trade secrets. Plaintiff has invested significant financial resources into the research, development and implementation of its confidential and proprietary information. Plaintiff argues that the substance of its LOL Program and Dealer Programs is only known by Plaintiff's management team and others who have a strict, designated "need to know." Plaintiff limits this information to its dealers' management-level personnel. Plaintiff provides its Pricing Data to its dealers' management-level personnel in confidence and expressly prohibits them from disclosing this information to unauthorized third parties. Furthermore, Plaintiff contends that the precise technical composition of its products, such as SOLO/DELTA, is only known within Plaintiff's organization, and is

4

maintained on a secure computer server to which only Plaintiff's management team has access, through computer passwords.

Plaintiff argues that Defendants have misappropriated its protected trade secrets and that Defendants either acquired these trade secrets through improper means, or disclosed them without Plaintiff's consent. On November 12, 2010, Plaintiff filed a Complaint for Damages and Injunctive Relief. (ECF No. 1.) Plaintiff's Complaint includes claims for Breach of Contract (Count One), Violation of Pennsylvania Uniform Trade Secret Act, 12 Pa. Cons. Stat. Ann. § 5302, *et seq.* (Count Two), Conversion of Trade Secrets and Confidential Information (Count Three), Unfair Competition (Count Four), and Civil Conspiracy (Count Five).[2] For purposes of this Motion, we address only Plaintiff's misappropriation of trade secrets claims.

## II. LEGAL STANDARD

"A temporary restraining order is a 'stay put,' equitable remedy that has its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." *J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 273 (3d Cir. 2002) (citations omitted). The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction. *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994). Plaintiff must demonstrate: 1) a likelihood of success on the merits; 2) the probability of irreparable harm if the relief is not granted; 3) that granting injunctive relief will not result in even greater harm to the other party; and 4) that granting relief

---

[2] Counts Two, Three, Four and Five all deal with Defendants' misappropriation of Plaintiff's trade secrets. Count One deals with Defendant Egolf's violation of the confidentiality/nondisclosure provisions of Egolf's Employment Agreement with LDFA. Plaintiff contends that it is an intended third party beneficiary of that contract. This assertion is supported by the Affidavit of Dennis Milhoan.

5

will be in the public interest. *Id.* (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)).

## III. DISCUSSION

### A. Failure to Join Necessary Party

Defendants raise two threshold issues: failure to join an indispensable party and *Colorado River* abstention

Defendants contend that LDFA is a necessary and indispensable party to this lawsuit, and because the joinder of LDFA will destroy diversity, we must dismiss this suit. Federal Rule of Civil Procedure 19(a) governs joinder of persons needed for the proper adjudication of a civil action. It provides in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if (1) in that person's absence, the court cannot accord complete relief among existing parties, or (2) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest, or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

LDFA has commenced a state-court action against Defendants and Bou-Matic. (Defs.' Resp. Ex. 1, ECF No. 15.) In that suit, which also seeks injunctive relief, LDFA alleges that Defendants breached a fiduciary duty and misappropriated LDFA's trade secrets regarding its customer lists and its "ProfitMax" system. LDFA also alleges that Bou-Matic tortiously interfered with LDFA's business and contractual relations. Defendants in this action argue that LDFA is a necessary party because the absence of LDFA may expose Defendants to multiple or

6

inconsistent obligations.

Defendants' argument is without merit. We may accord complete relief for all of the claims made in Plaintiff's Complaint and Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order without the presence of LDFA. With regard to the instant Motion, Plaintiff seeks injunctive relief as to Defendants' misappropriation of Plaintiff's, not LDFA's, proprietary and confidential information. Moreover, Defendants are not subject to duplicative obligations because LDFA may not enforce and does not seek to enforce Plaintiff's trade secrets in its state-court action. LDFA's lawsuit in state-court is premised on its own purported trade secrets. Plaintiff, on the other hand, brings the instant action to enforce its confidential information relating to the LOL Program, Dealer Programs, SOLO/DELTA, Pricing Data and its business development plans. Plaintiff and LDFA are each entitled to enforce their own separate and distinct trade secrets. Accordingly, we reject Defendants' argument that LDFA is a necessary party in this lawsuit.

**B.    Abstention**

Defendants also argue that since there is a prior state-court action filed by LDFA against them, we should abstain from exercising jurisdiction in this case. A federal court may abstain from exercising jurisdiction over a case when "exceptional circumstances" exist. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). However, mere duplicativeness of parallel state and federal proceedings is not sufficient to justify abstention. Moreover, lawsuits that are not truly duplicative do not warrant *Colorado River* abstention. *Trent v. Dial Med. of Fla., Inc.*, 33 F.3d 217, 223 (3d Cir. 1994). Generally, "cases are parallel so as to justify abstention under *Colorado River* when they involve the same parties and claims." *Id.*; *see*

*Timoney v. Upper Merion Twp.*, 66 F. App'x 403, 405 (3d Cir. 2003). The federal and state proceedings are parallel "if they involve the same parties and 'substantially identical' claims, raising 'nearly identical allegations and issues.'" *Timoney*, 66 F. App'x at 405 (citations omitted).

Abstention is inappropriate here because the parties and claims in the two lawsuits are different. Plaintiff and LDFA each seek to enforce their own trade secrets. LDFA's breach of fiduciary duty claim is distinguishable from Plaintiff's trade secret claim. Plaintiff does not allege that Defendants owed it any fiduciary duty; instead, Plaintiff alleges that Defendants unlawfully disclosed Plaintiff's, not LDFA's, proprietary information which Defendants acquired in confidence. These two lawsuits are clearly not parallel. They involve different parties and different trade secrets. Accordingly, we reject Defendants' abstention argument.

### C. Misappropriation of Trade Secrets

The Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. Cons. Stat. Ann. § 5301, *et seq.*, defines a trade secret as:

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§ 5302. In determining whether certain information is a trade secret, the relevant factors under Pennsylvania law are "substantial secrecy and competitive value to the owner." *Emergency Care Research Inst. v. Guidant Corp.*, No. 06-1898, 2007 WL 2702455, at *4 (E.D. Pa. Sept. 12, 2007) (citations omitted). Pennsylvania courts consider the following when determining whether

8

information is a trade secret:

> (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* at *5 (citing *Pestco, Inc. v. Assoc. Prods, Inc.*, 880 A.2d 700, 706 (Pa. Super. Ct. 2005)).

Plaintiff has properly identified five purported trade secrets: the chemical composition specifications for SOLO/DELTA, Pricing Data, Dealer Programs, LOL Program and its business development plans. Such information is typical of that which trade secret law seeks to protect. *See SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1260 (3d Cir. 1985) (distinguishing between pure pricing information, readily obtainable from other sources, and proprietary pricing formulae derived from a "whole range of data," which are entitled to trade secret protection); *Amerisourcebergen Drug Corp. v. Am. Assoc. Druggists, Inc.*, No. 05-5927, 2008 WL 248933, at *25 (E.D. Pa. Jan. 29, 2008) (refusing to grant summary judgment where trade secret claim based, in part, on incentive and rebate programs); *BIEC Int'l, Inc. v. Global Steel Servs.*, 791 F. Supp. 489, 545 (E.D. Pa. 1992) (describing protection for certain pricing information, business plans, and marketing strategies).

In addition to proffering information that clearly has independent economic value, Plaintiff has shown substantial secrecy. Only Plaintiff's management has access to the precise composition of Plaintiff's products, including SOLO/DELTA. Plaintiff's business development plans, the LOL Program and the Dealer Programs are not generally known by Plaintiff's competitors. Plaintiff has disclosed this information to members of the board of directors of its

dealers, but only after telling the directors that this information is confidential and that they may not disclose this proprietary information to third parties. Moreover, Plaintiff's Pricing Data is not available to the public. Plaintiff affixes a "confidential" stamp on its Pricing Data when it discloses it to particular dealers and specifically prohibits dealers from divulging this information to unauthorized parties.

Defendants argue that Plaintiff's disclosures to the board of directors precludes any trade secret claim. However, what is required to maintain a trade secret action is not absolute secrecy, but rather substantial secrecy. *See O.D. Anderson, Inc. v. Cricks*, 815 A.2d 1063, 1070 (Pa. Super. Ct. 2003). Plaintiff has met this burden of demonstrating that it can prove substantial secrecy.

Defendants also argue that the information that they learned at LDFA board meetings, including precise descriptions of the LOL Program, Dealer Programs and Plaintiff's business development plans, were not trade secrets because Defendants did not sign any written confidentiality agreement with Plaintiff. Defendants cite the cases of *N3 Oceanic, Inc. v. William T. "Ted" Shields*, No. 06-1304, 2006 U.S. Dist. LEXIS 58563, at *23 (E.D. Pa. Aug. 21, 2006); *Emergency Care*, 2007 WL 2702455, at *4, for support of this proposition. These cases are not dispositive. They each describe confidentiality agreements as one factor in determining whether a plaintiff took sufficient steps to maintain substantial secrecy of its proprietary information. Confidentiality agreements "are not necessary in every case, however, if the other precautions taken by the plaintiff are sufficient." *Swift Bros. v. Swift & Sons, Inc.*, 921 F. Supp. 267, 277 (E.D. Pa. 1995).

Based upon the present record, we are satisfied that Plaintiff has shown "substantial

secrecy and competitive value to the owner." Plaintiff has therefore identified five cognizable trade secrets.

Plaintiff must show that Defendants misappropriated Plaintiff's trade secrets. Misappropriation includes:

> (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (2) disclosure or use of a trade secret of another without express or implied consent by a person who:
>     (i) used improper means to acquire knowledge of the trade secret; or
>     (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>         (A) derived from or through a person who has utilized improper means to acquire it;
>         (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>         (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

§ 5302.

Plaintiff has clearly shown that Defendants misappropriated its trade secrets. In his affidavit Beers advises that Defendants never had access to Plaintiff's restricted Pricing Data. Moreover, the Pricing Data was never discussed at any LDFA board meeting. Nevertheless, at the November 2, 2010, LDFA board meeting in which Defendants' employment was terminated, Defendant Dry admitted that he disclosed Plaintiff's Pricing Data to a prospective business partner. Based on the security precautions established to prevent Defendants from acquiring knowledge of Plaintiff's Pricing Data, it is reasonable to conclude at this juncture that Defendants acquired this information through improper means.

Plaintiff also alleges that at LDFA board meetings Defendants acquired confidential information related to the Dealer Programs, LOL Program, and Plaintiff's business development

11

plans under circumstances giving rise to a duty to maintain its secrecy. Beers prefaced his disclosures of this confidential information by advising the board that its members may not divulge Plaintiff's proprietary information to third parties. We are satisfied that Beers' warning, combined with the confidential nature of this business information, created a duty of secrecy among LDFA's board of directors. Defendants cite no authority to the contrary. Although Defendants did not sign confidentiality agreements, this is not fatal to Plaintiff's trade secret claims. *Swift Bros.*, 921 F. Supp. at 277. Plaintiff alleges that Defendants presented their business plan to Bou-Matic in July 2010. Plaintiff further alleges that Defendants disclosed the precise nature of Plaintiff's business development plans, LOL Program and Dealer Programs to Bou-Matic and other entities that compete with Plaintiff. Plaintiff has sufficiently demonstrated that Defendants misappropriated, and may continue to misappropriate, these trade secrets, the knowledge of which, Defendants acquired in confidence.

Finally, Plaintiff alleges that Defendants disclosed confidential information about the chemical specifications of SOLO/DELTA to Bou-Matic. Plaintiff, however, provides very little detail in support of this bald assertion. On the other hand, Defendants have both submitted affidavits in which they specifically deny that they ever obtained any information concerning the technical composition of SOLO/DELTA. They further declare that they never divulged the technical composition of SOLO/DELTA to Bou-Matic or Jones Dairy Service, Inc., one of Bou-Matic's dealers. Based upon this record, we conclude that Plaintiff is not likely to prevail on its allegation that Defendants misappropriated the technical specifications for SOLO/DELTA.

We are satisfied that the remaining requirements for the granting of a temporary restraining order favor Plaintiff. Plaintiff has demonstrated irreparable harm if the relief is not

granted. "Harm is irreparable when it cannot be adequately compensated in damages, either because of the nature of the right that is injured, or because there exists no certain pecuniary standards for the measurement of damages." *Nat'l Bus. Servs., Inc. v. Wright*, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1998). Plaintiff argues that it will be impossible to determine the extent of Plaintiff's loss of market share caused by Defendants' misappropriation of its trade secrets. It seems clear that if Plaintiff's competitors had the trade secrets that Defendants have misappropriated, Plaintiff's would be at a significant competitive disadvantage in the market place. We agree that it would be very difficult if not impossible to ascertain what portion of Plaintiff's loss in sales is attributable to the misappropriated information. The harm would be irreparable. We similarly find that granting injunctive relief will not result in even greater harm to Defendants. Our issuance of a preliminary injunction will maintain the status quo by simply prohibiting Defendants' from using Plaintiff's proprietary information. Finally, injunctive relief is in the public interest in that it will deter Defendants and others from misappropriating trade secrets, a practice which stifles, rather than promotes, competition.

### D. Expedited Discovery

Plaintiff requests expedited discovery prior to a preliminary injunction hearing. Specifically, Plaintiff seeks to serve discovery limited to gathering evidence concerning the scope of Defendants' acquisition, use and disclosure of Plaintiff's confidential and proprietary information. Expedited discovery is particularly appropriate where a plaintiff seeks injunctive relief. *Entm't Tech. Corp. v. Walt Disney Imagineering*, No. 03-3546, 2003 WL 22519440, at *3 (E.D. Pa. Oct. 2, 2003). Considering the pending preliminary injunction hearing, the need for discovery, and the narrow breadth of Plaintiff's requests, we will grant Plaintiff's Motion for

13

expedited discovery.

## IV. CONCLUSION

For all of these reasons, we will grant Plaintiff's Motion for a Temporary Restraining Order.

An appropriate Order follows.

BY THE COURT:

_____
R. BARCLAY SURRICK, J.