IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EXL LABORATORIES, LLC : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 10-6282 |
| KRIS EGOLF ET AL. : | |

SURRICK, J.                                                                                       MARCH  11 , 2011

### MEMORANDUM

Presently before the Court is Defendants' Motion to Dismiss. (ECF No. 19.) For the following reasons, Defendants' Motion will be granted in part and denied in part.

**I.    BACKGROUND**

On December 7, 2010, after a hearing, we issued a Memorandum and Order which temporarily restrained Defendants from misappropriating Plaintiff's trade secrets and other confidential information. *EXL Labs., LLC v. Egolf*, No. 10-6282, 2010 WL 5000835 (E.D. Pa. Dec. 7, 2010). Two days later, Defendants filed the instant Motion to Dismiss the Complaint.

Plaintiff EXL Laboratories is engaged in the business of manufacturing dairy hygiene and food sanitation products and technologies. Plaintiff primarily markets its goods and services through exclusive dealers and distributors. Plaintiff manufactures and markets to dairy producers a product called SOLO acid detergent, which is also licensed and sold under the DELTA trademark. Plaintiff provides its dealers with unique third-party incentives through Land O'Lakes, Inc. ("LOL Program"). Plaintiff also provides incentives and rebates through its own Dealer Programs.

Plaintiff restricts its dealers access to pricing information, which includes the price Plaintiff charges its dealers for Plaintiff's products and services ("Pricing Data"). Plaintiff affixes a "confidential" stamp on its Pricing data and prohibits its dealers from disclosing the Pricing Data to third parties. Plaintiff also internally restricts access to its Pricing Data to individuals who have a designated "need to know," and by storing this information on a secure computer server that is password protected.

Lancaster Dairy Farm Automation, Inc. ("LDFA") is the exclusive dealer for Plaintiff's products in Pennsylvania. At all relevant times, Defendants Dry and Egolf were employees of LDFA and directors of LDFA. Defendant Egolf and LDFA entered into an Employment Agreement containing non-disclosure and other restrictive covenants.[1] (Employment Agreement, Mot. Prelim. Inj. Ex. 10, ECF No. 3.) Defendant Dry did not enter any such agreement with LDFA.

As directors of LDFA, Defendants were privy to certain confidential information with

---

[1] The Employment Agreement states in relevant part:

    8. Employee shall not intentionally and maliciously prejudice any of the existing accounts, customers and good will presently or heretofore served by Employer or divulge, publish or otherwise reveal directly or through any other firm, person or entity any information or facts concerning the business of Employer, including without limitation customer or prospect lists, customer relationship information, pricing, financial and other operating information and supplier relationships.

    9. Employee recognizes that by reason of his unique position with Employer, he will have access to knowledge and information concerning Employer and that his entering into competition with Employer as described above would cause irreparable injury. Employee therefore agrees that in addition to whatever other remedies are available to Employer, Employer may enforce these covenants in equity by way of injunction to restrain any violation, threatened violation or continued violation thereof.

respect to Plaintiff's business.  Specifically, Roger Beers, who is Plaintiff's vice president and general manager, as well as an outside director of LDFA, has on several occasions disclosed Plaintiff's confidential information to members of the LDFA board of directors, which included Defendants.  However, before disclosing such confidential information, Beers informed all members of the board that the confidential information that he was divulging to them must be treated as confidential and should not be disclosed to third parties.  Beers has disclosed to the LDFA board of directors such confidential information as the precise nature of the Dealer Programs, the LOL Program, and Plaintiff's business development plans.  He did not discuss Pricing Data during any LDFA board meeting.

On October 28, 2010, Beers received an email from Carter S. Elliot, III, one of Plaintiff's employees, which informed Beers that Defendants had had communications with Bou-Matic, LLC, a competitor of Plaintiff, about Plaintiff's Dealer Programs and undisclosed information related to SOLO/DELTA.  Specifically, the email advised that Defendants had paid a company to assist them with the preparation of a business plan for a business to compete with Plaintiff and LDFA; that Defendants discussed with Bou-Matic the precise nature of Plaintiff's Dealer Programs; that Defendants discussed Bou-Matic's development of a product designed to compete with SOLO/DELTA, prior to Defendants' nascent company consummating a partnership with Bou-Matic; and that Defendants discussed other details of Plaintiff's LOL Program and business development plans.  One of LDFA's employees, Becky Guhl, was present at meetings conducted by Defendants concerning Defendants' intentions to create a company in direct competition with LDFA.  Guhl has confirmed that the information contained in the October 28, 2010, email is a true and complete summary of the information communicated to her at such meetings.

On October 29, 2010, Beers and Dennis Milhoan, president of LDFA, commenced an internal investigation of the activities of Defendants. Beers found an August 19, 2010, email from Defendant Dry to Lance Reynolds, the Bou-Matic account manager, which establishes that Dry transmitted confidential Pricing Data directly to Bou-Matic without Plaintiff's authorization.

On November 2, 2010, LDFA convened a meeting of the board of directors. During the meeting, Defendants each admitted that they had presented their business plan to Bou-Matic area manager, Duane Kleve, on July 6, 2010. Defendants admitted the authenticity of the August 19, 2010, email. Dry further admitted to transmitting Plaintiff's Pricing Data to Reynolds, the Bou-Matic account manager. Dry also produced copies of notes that he took at the meeting with Kleve. The notes show that Defendants disclosed Pricing Data with respect to "chlorinated cleaners and acid cleaners." At the meeting, Beers received a copy of Defendants' business plan, which Defendants had presented to prospective business partners. The business plan is premised upon a manufacturer-dealer business model that is "strikingly similar" to the relationship between Plaintiff and LDFA. Specifically, the business plan contains programs which imitate Plaintiff's LOL Program and Dealer Programs. At the conclusion of the November 2, 2010, board meeting, Milhoan terminated the employment of Dry and Egolf, effective immediately.

On November 12, 2010, Plaintiff filed both a Complaint and a Motion for Injunctive Relief. (ECF Nos. 1, 3.) The Complaint includes claims for Breach of Contract (Count One), Violation of Pennsylvania Uniform Trade Secret Act, 12 Pa. Cons. Stat. Ann. §§ 5302 *et seq.* (Count Two), Conversion of Trade Secrets and Confidential Information (Count Three), Unfair Competition (Count Four), and Civil Conspiracy (Count Five). On December 7, 2010, we issued a Temporary Restraining Order enjoining Defendants from misappropriating Plaintiff's trade

4

secrets and other confidential information. On December 9, 2010, Defendants' filed the instant Motion to Dismiss. On December 30, 2010, we issued a Consent Order, which continued indefinitely the Temporary Restraining Order as a Preliminary Injunction, pending a decision on the merits. Plaintiff has filed a Response in Opposition to the Motion to Dismiss (ECF No. 24) and Defendants have filed a Reply thereto (ECF. No. 31). The matter is now ripe for disposition.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

### A. Breach of Contract Claim Against Defendant Egolf

Plaintiff is not a party to any express contract with Defendant Egolf. Nevertheless, Plaintiff argues that it was an intended, third-party beneficiary of Egolf's Employment

5

Agreement with LDFA. Plaintiff argues that Egolf breached this contract by disclosing Plaintiff's trade secrets and other confidential information.

The Employment Agreement, by its terms, is governed in accordance with Maryland law. Generally, "a third party beneficiary contract arises when two parties enter into an agreement with the intent to confer a direct benefit on a third party, allowing the third party to sue on the contract despite the lack of privity." *Flaherty v. Weinberg*, 492 A.2d 618, 622 (Md. 1985). "To establish the existence of the requisite duty under this theory, the non-party plaintiff must show that a party actually intended to benefit him, and that the promisee's intent to confer upon him this benefit was a direct purpose of the transaction or relationship." *Salmon v. Cable & Wireless USA, Inc.*, No. 01-394, 2003 WL 1730413, at *3 (D. Md. Mar. 18, 2003) (internal citations omitted); *see also Merrick v. Mercantile-Safe Deposit & Trust Co.*, 855 F.2d 1095, 1100 (4th Cir. 1988); *Marlboro Shirt Co. v. Am. Dist. Tel. Co.*, 77 A.2d 776, 777 (Md. 1951) ("[I]n order for a third party beneficiary to recover for a breach of contract it must clearly appear that the parties intended to recognize him as the primary party in interest and as privy to the promise. An incidental beneficiary acquires by virtue of the promise no right against the promisor or promisee."). The determination of whether a third party to the contract may recover under this theory is based on "the intention of the contract, revealed by its terms, in light of the surrounding circumstances." *In re Merry-Go-Round Enters., Inc.*, 218 B.R. 361, 366 (Bankr. D. Md. 1998) (quoting *Hamilton & Spiegel, Inc. v. Bd. of Educ. of Montgomery Cnty.*, 195 A.2d 710, 710 (Md. 1963)).

Although the name of an "intended third-party beneficiary normally appears in the language of a contract, '[t]here are cases where the name of the beneficiary is not stated, but

6

where he can recover under the contract.'" *Wong v. Aragona*, 815 F. Supp. 889, 892 (D. Md. 1993) (quoting *Marlboro*, 77 A.2d at 778); *see Salmon*, 2003 WL 1730413, at *3 n.2 (finding it "not essential to the creation of a right in the third-party beneficiary that he be identified when a contract is made"); *Geo. Byers Sons, Inc. v. E. Europe Imp. Exp., Inc.*, 488 F. Supp. 574, 584 (D. Md. 1980) ("While it is not essential to the creation of a right in the third-party beneficiary that he be identified when a contract is made, in order for him to recover on that contract 'it must clearly appear that the parties intended to recognize him as the primary party in interest and as privy to the promise.'") (citations omitted). Moreover, "[i]f a class of persons is clearly designated as beneficiaries, an individual of that class can maintain suit even though not specifically named." *White v. Gen. Motors Corp.*, 541 F. Supp. 190, 195 n.10 (D. Md. 1982) (quoting 4 Corbin on Contracts § 781).

Plaintiff argues that it was a third-party beneficiary of Defendant Egolf's Employment Agreement with LDFA. Plaintiff argues that as such it may enforce the terms of the Employment Agreement against Egolf. The Employment Agreement says that Egolf "shall not intentionally and maliciously prejudice any of the existing accounts, customers and good will presently or heretofore served by Employer or divulge, publish or otherwise reveal directly or through any other firm, person or entity any information or facts concerning the business of Employer." (Employment Agreement ¶ 8.) According to Plaintiff, Egolf breached this contract by intentionally divulging Plaintiff's proprietary information to Bou-Matic. Plaintiff offers the affidavit of Dennis Milhoan, the president of LDFA, to support this argument. The affiant states, *inter alia*, that "I recall that LDFA intended that the Employment Agreement would protect EXL's confidential, proprietary and trade-secret information from unauthorized use and

7

disclosure, and that this intent was expressed to Egolf before he signed the agreement." (Mot. Prelim. Inj. Ex. 9 ¶ 7.) Plaintiff asks us to entertain the parties' subjective understandings of the contract because intent is the "principal touchstone for determining whether a third party beneficiary contract exists." *See Greenbelt Ventures, LLC v. Wash. Metro. Area Transit Auth.*, No. 10-157, 2010 WL 3469957, at *8 (D. Md. Sept. 1, 2010) (citations omitted).

In response, Egolf argues that Plaintiff is an incidental beneficiary of the contract without any capacity to enforce its terms. He argues that while Plaintiff's nominal absence is not fatal to its claim, it is strongly probative of the intentions of the contracting parties. *Nat'l Labor Coll., Inc. v. Hillier Grp. Architecture, N.J., Inc.*, No. 09-1954, 2010 U.S. Dist. LEXIS 95825, at *37 (D. Md. Sept. 14, 2010) (finding "lack of reference" supports incidental, rather than intended, beneficiary); *In re Merry-Go-Round*, 218 B.R. at 366 ("The name of an intended third party beneficiary is normally listed in the contract."). Furthermore, Egolf notes that the Employment Agreement only gives LDFA the power to enforce the restrictive covenants contained therein. (Employment Agreement ¶ 9 ("Employer may enforce these covenants in equity by way of injunction to restrain any violation, threatened violation or continued violation thereof.").) Conspicuously absent is any reference to a third party enforcing the contract.

We are satisfied that the record does not support a finding that Plaintiff is an intended third party beneficiary of Egolf's Employment Agreement. Initially, we need not consider the Milhoan affidavit because Maryland adheres to the objective theory of contract interpretation:

> [A court is to] determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the

8

parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean.

*Towson Univ. v. Conte*, 862 A.2d 941, 947 (Md. 2004) (quoting *Gen. Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985)). Accordingly, we must give effect to the clear terms of the contract, regardless of the parties' subjective beliefs. *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003) ("When the clear language of a contract is unambiguous, the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used."). Since the language of the Employment Agreement is unambiguous, there is no need to go further. Plaintiff is not referenced in the Employment Agreement. There is no indication that Plaintiff was a "primary party in interest" or that bestowing a benefit upon Plaintiff was a "direct purpose" of the Agreement. In fact, the contract says just the opposite. In the same paragraph in which the Agreement notes that Egolf would have access to confidential information, it says that LDFA, not Plaintiff, may enforce these covenants. If the parties intended to directly benefit Plaintiff, presumably the Agreement would have contemplated Plaintiff's enforcement. Furthermore, while the Agreement does say that Egolf must not prejudice any of LDFA's existing account or customers, we will not interpret this clause so expansively as to provide a cause of action in each entity that does business with LDFA. Such a broad interpretation would extend the third party beneficiary doctrine well beyond its narrow parameters. If anything, Plaintiff is an incidental beneficiary of a contract that seeks to protect LDFA and Egolf by articulating the terms of Egolf's employment. As such, Plaintiff may not enforce the terms of the Employment Agreement. *Marlboro*, 77 A.2d at 777.

Consideration of the Milhoan affidavit does not alter our judgment. To qualify as an intended beneficiary, we must find that it "clearly appears" that the parties intended Plaintiff to be privy to the Agreement. The fact that Plaintiff needs to rely on external evidence simply reinforces the conclusion that the Agreement itself does not clearly confer a direct benefit on Plaintiff.

Accordingly, Defendant Egolf's Motion to Dismiss Plaintiff's breach of contract claim will be granted.

B.   **Violation of Pennsylvania Uniform Trade Secrets Act**

Plaintiff argues that Defendants misappropriated its trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. Cons. Stat. Ann. §§ 5301 *et seq.* Defendants do not dispute that Plaintiff has sufficiently identified five specific trade secrets, including: 1) SOLO/DELTA; 2) LOL Program; 3) Dealer Programs; 4) Pricing Data; and 5) business development plans.[2] Defendants only argue that they did not owe Plaintiff any legally cognizable duty.[3]

---

[2] Our Memorandum dated December 7, 2010, discusses in greater detail the nature of these putative trade secrets, and the steps Plaintiff took to maintain their secrecy. *EXL Labs.*, 2010 WL 5000835, at *5-7.

[3] Section 5302, in relevant part, defines misappropriation as:

(1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(2) disclosure or use of a trade secret of another without express or implied consent by a person who:
    (i) used improper means to acquire knowledge of the trade secret;
    (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
        (A) derived from or through a person who had utilized improper means to acquire it;

Defendants misconstrue the appropriate legal standard. Defendants first argue that Plaintiff cannot rely on Defendants' fiduciary duties as directors of LDFA, because those duties run only to LDFA, not to Plaintiff. *See* 15 Pa. Cons. Stat. Ann. § 1712(a) (setting forth standard of care for direction of business). However, Plaintiff's misappropriation of trade secrets claim does not depend on the existence of a fiduciary duty. Rather, PUTSA simply prohibits Defendants from disclosing Plaintiff's trade secrets where Defendants "used improper means to acquire knowledge of the trade secret" or where the trade secret was "acquired under circumstances giving rise to a duty to maintain its secrecy." 12 Pa. Cons. Stat. Ann. § 5302. PUTSA does not require a fiduciary relationship.

Defendants argue that Plaintiff's claim fails because "trade secret disputes almost always arise in the context of employer claims against former employees." (Defs.' Mot. Dismiss 6.) Whether this is true or not, PUTSA's statutory language does not preclude trade secret litigation outside of the employer-employee context.

Defendants cite two cases in support of the proposition that they owed Plaintiff no legal duty because courts have consistently rejected implied fiduciary or confidential relationships between manufacturers and dealers. *See, e.g.*, *Frosty Bites, Inc. v. Dippin' Dots, Inc.*, No. 01-1532, 2003 U.S. Dist. LEXIS 8472, at *15 (N.D. Tex. May 19, 2003) ("When the relationship between the parties is one of manufacturer and distributor, as in this case, there is no implied duty to maintain confidences.") (citations omitted); *Aerospace Am., Inc. v. Abatement Techs.,*

---

(B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
(C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

11

*Inc.*, 738 F. Supp. 1061, 1071 (E.D. Mich. 1990) ("Courts have repeatedly rejected the proposition that a fiduciary relationship or obligation exists between a manufacturer and a distributor of its products."). However, the cases cited by Defendants do not advance their cause. Plaintiff does not predicate its argument on an implied duty. Plaintiff alleges that at LDFA board meetings Defendants acquired Plaintiff's confidential information. Beers prefaced his disclosures of this confidential information by advising the board that its members may not divulge Plaintiff's proprietary information to third parties. Plaintiff must demonstrate that such information was "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." § 5302(2)(ii)(B). We are satisfied that Beers's warning, combined with the confidential nature of this business information, created a duty of secrecy among LDFA's board of directors. Although Defendants did not sign confidentiality agreements, this alone is not dispositive. *Swift Bros. v. Swift & Sons, Inc.*, 921 F. Supp. 267, 277 (E.D. Pa. 1995) ("Such agreements are not necessary in every case, however, if the other precautions taken by the plaintiff are sufficient."). Moreover, Defendants' citation directly undermines their implied duty argument. *Aerospace*, 738 F. Supp. at 1071 (noting that confidential relationships in trade secret cases generally "require that there be an explicit, *at least verbal*, warning that the information disclosed is confidential and/or not to be disclosed or used without authorization") (emphasis added). Plaintiff does not argue that Defendants had an implied duty to maintain its confidences; rather, Plaintiff alleges that Defendants were explicitly instructed not to disclose Plaintiff's proprietary information.

Plaintiff alleges that the Pricing Data was never discussed at any LDFA board meeting. Nevertheless, at the November 2, 2010, LDFA board meeting in which Defendants' employment

was terminated, Defendant Dry admitted that he disclosed Plaintiff's Pricing Data to a prospective business partner. Based on the security precautions established to prevent Defendants from acquiring knowledge of the Pricing Data, Plaintiff has sufficiently alleged that Defendants acquired this information through improper means.[4] PUTSA does not require a confidential or fiduciary relationship under such circumstances.

Therefore, Defendants' Motion to Dismiss Plaintiff's misappropriation of trade secrets claim will be denied.

### C. Conversion of Trade Secrets and Confidential Information

Plaintiff argues that Defendants converted its trade secrets and confidential information. Defendants argue that PUTSA preempts this claim.

PUTSA "displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret," with the exception of "(1) contractual remedies, whether or not based upon misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." 12 Pa. Cons. Stat. Ann. § 5308. Our interpretation of the second exception governs Plaintiff's claim.

Plaintiff cites a series of cases holding that PUTSA "does not preempt common law tort claims when it has yet to be determined whether the information at issue constitutes a trade secret." *Cenveo Corp. v. Slater*, No. 06-2632, 2007 U.S. Dist. LEXIS 9966, at *10 (E.D. Pa. Feb. 12, 2007); *Weiss v. Fiber Optic Designs, Inc.*, No. 06-5258, 2007 WL 3342605, at *1 (E.D.

---

[4] Section 5302(2)(i) prohibits "disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret."

13

Pa. Nov. 9, 2007) ("Dismissing these claims now would require the court to make a determination that Weiss's conduct constitutes misappropriation and that the misappropriated information at issue was a trade secret. That would be inappropriate at this stage in the litigation."); *see also Youtie v. Macy's Retail Holding, Inc.*, 626 F. Supp. 2d 511, 521-22 (E.D. Pa. 2009) (citing cases); *Roger DuBois N. Am., Inc. v. Thomas*, No. 05-2566, 2006 U.S. Dist. LEXIS 65674, at *8-10 (M.D. Pa. Sept. 14, 2006). Plaintiff argues that it would be inappropriate to dismiss its conversion claim because PUTSA does not preempt conversion of confidential information that does not reach trade secret status. *See Roger DuBois*, 2006 U.S. Dist. LEXIS 65674, at *9-10 ("Plaintiff argues in rebuttal that because their conversion claim is not based solely on misappropriation of trade secrets, that those portions of their claim dealing with other confidential and/or proprietary information are not preempted by the UTSA and therefore not subject to dismissal.").

In response, Defendants point to a line of cases holding that PUTSA, as well as other similar trade secret acts, preempt common law tort claims, including conversion. *Power Contracting, Inc. v. Stirling Energy Sys., Inc.*, No. 09-970, 2010 U.S. Dist. LEXIS 123635, at *16-18 (W.D. Pa. Nov. 22, 2010); *see also Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 949-50 (W.D. Mich. 2003); *Mortg. Specialists, Inc. v. Davey*, 904 A.2d 652, 664-65 (N.H. 2006). The thrust of these cases is that an owner of confidential information has no actionable right in that information unless it qualifies as a trade secret under one of the uniform trade secret acts. *Cenveo*, 2007 U.S. Dist. LEXIS 9966, at *7-8 (describing *Bliss* and its progeny). As one court put it:

> A claim cannot be preempted or not preempted based entirely upon whether or not

> the information at issue qualifies as a trade secret. If the information is a trade secret, the plaintiff's claim is preempted; if not, the plaintiff has no legal interest upon which to base his or her claim. Either way, the claim is not cognizable.

*Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 657 (E.D. Tenn. 2004).

We agree with the cases holding that PUTSA does not preempt common law torts before the court has determined whether the misappropriated information constitutes a trade secret. Like other courts espousing this view, we disagree with the assumption underpinning Defendants' authorities. *Cenveo*, 2007 U.S. Dist. LEXIS 9966, at *13 ("[W]ithout clear intent, it should not be assumed that the Pennsylvania legislature's enactment of the PTSA was intended to abrogate common law conversion claims based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant."); *see also Youtie*, 626 F. Supp. 2d at 522 n.9 ("Information need not rise to the level of a trade secret in order to qualify for protection under other theories.") (citing *Brett Senior & Assocs., P.C. v. Fitzgerald*, No. 06-1412, 2007 WL 2043377, at *8 (E.D. Pa. July 13, 2007)). If Plaintiff's conversion argument was solely based on misappropriation of trade secrets, PUTSA would preempt this claim. However, Plaintiff premises its conversion claim on misappropriation of both trade secrets and other confidential information. If we dismiss Plaintiff's conversion claim, and later determine that Plaintiff's confidential information does not constitute trade secrets, we risk leaving Plaintiff without a remedy. *See Cenveo*, 2007 U.S. Dist. LEXIS 9966, at *10-11; *Roger DuBois*, 2006 U.S. Dist. LEXIS 65674, at *9. Since we cannot establish at this juncture whether the confidential information is protected under trade secrets law, we cannot conclude that PUTSA preempts Plaintiff's conversion claim.

Accordingly, Defendants' Motion to Dismiss Count Three will be denied.

D.  **Unfair Competition**

Plaintiff argues that Defendants engaged in unfair competition. Defendants offer two arguments as to why this claim should be dismissed.

Defendants argue that Plaintiff's unfair competition claim fails because Plaintiff does not allege that Defendants "passed off" goods. Pennsylvania courts, however, have not restricted unfair competition to passing off. *Giordano v. Claudio*, 714 F. Supp. 2d 508, 521 (E.D. Pa. 2010); *see also Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 319 (3d Cir. 1995) (citing *Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy*, 203 A.2d 469, 473 (Pa. 1964)). Even though unfair competition generally refers to the passing off of a rival's goods as one's own, the courts "have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." *Synthes (U.S.A.) v. Globus Med., Inc.*, No. 04-1235, 2005 WL 2233441, at *8 (E.D. Pa. Sept. 14, 2005) (citations omitted). Moreover, "the Pennsylvania common-law tort of unfair competition is coextensive with the definition promulgated in the Restatement (Third) of Unfair Competition."[5] *See, e.g.*, *Giordano*,

---

[5] The Restatement (Third) of Unfair Competition § 1 (1995) provides in relevant part:

> One who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other for such harm unless:
> (a) the harm results from acts or practices of the actor actionable by the other under the rules of this Restatement relating to:
> (1) deceptive marketing, as specified in Chapter Two;
> (2) infringement of trademarks and other indicia of identification, as specified in Chapter Three;
> (3) appropriation of intangible trade values including trade secrets and the right of publicity, as specified in Chapter Four;

714 F. Supp. 2d at 521-22; *Bldg. Materials Corp. of Am. v. Rotter*, 535 F. Supp. 2d 518, 526 n.4 (E.D. Pa. 2008); *Babiarz v. Bell Atl.-Pa., Inc.*, No. 1863, 2001 WL 1808554, at *9-10 (Pa. Ct. Com. Pl. July 20, 2001); *Lakeview Ambulance & Med. Servs., Inc. v. Gold Cross Ambulance & Med. Serv., Inc.*, No. 1994-2166, 1995 WL 842000, at *2-3 (Pa. Ct. Com. Pl. Oct. 18, 1995).[6] Nevertheless, the unfair competition doctrine may not be applied "'as a virtual catch-all for any form of wrongful business conduct' or to 'include all forms of modern business torts.'" *Giordano*, 714 F. Supp. 2d at 522 (quoting *USX Corp. v. Adriatic Ins. Co.*, 99 F. Supp. 2d 593, 619 (W.D. Pa. 2000)).

Based upon the authority cited, which applied the broad definition set forth in the Restatement (Third) of Unfair Competition, we reject Defendants' contention that the unfair competition doctrine is confined to passing off. Plaintiff's claim, which falls squarely within the plain language of the Restatement, is premised on Defendants' misappropriation of trade secrets and other confidential information.

Defendants also argue that Plaintiff's unfair competition claim is preempted by PUTSA. Our rejection of this argument as to Plaintiff's conversion claim applies with equal force to Plaintiff's unfair competition claim. *See supra* Section IIIC. We cannot at this time make a determination as to whether Plaintiff's unfair competition claim is solely premised on

---

or from other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public . . . .

[6] The Pennsylvania Supreme Court has not specifically adopted the Restatement's definition. *See Synthes (U.S.A.)*, 2005 WL 2233441, at *9. Defendants argue that as a federal district court sitting in diversity, we should therefore be reluctant to apply it. (Defs.' Mot. Dismiss 10.) We disagree with Defendants and find ample support for the Restatement's adoption in the cited Pennsylvania state cases and the Eastern District of Pennsylvania cases.

confidential information that constitutes trade secrets within the meaning of PUTSA. *See Hecht v. Babyage.com, Inc.*, No. 10-724, 2010 WL 3940882, at *4-5 (M.D. Pa. Oct. 6, 2010) (denying motion to dismiss unfair competition claim prior to determination of whether the information at issue constituted trade secrets); *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07-1029, 2008 WL 1859811, at *6 (W.D. Pa. Apr. 23, 2008) ("It may well be, in the end, that Plaintiff's unfair competition claim is preempted. But this is not the stage of the litigation to do so."). It would therefore be premature to dismiss Plaintiff's unfair competition claim.

For these reasons, Defendants' Motion to Dismiss Plaintiff's unfair competition claim will be denied.

### E. Civil Conspiracy

To establish a claim for civil conspiracy, Plaintiff must demonstrate: 1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)). Plaintiff must show an existing independent wrong or tort. *See Levin v. Upper Merion Twp.*, 90 F. App'x 653, 667 (3d Cir. 2004) (citations omitted). A civil conspiracy claim requires proof of malice, or intent to injure. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).

Defendants argue that Plaintiff's civil conspiracy claim is preempted by PUTSA. For the reasons stated above, *see supra* Section III(C)-(D), we disagree. *See also Ideal Aerosmith*, 2008 WL 1859811, at *6 ("Defendants have failed to cite any case law dismissing conspiracy claims in

the face of valid claims under PUTSA.").

According to Defendants, Plaintiff does not allege an independent wrong which could support a civil conspiracy. We have found, however, that Plaintiff sufficiently alleges claims for misappropriation of trade secrets, conversion, and unfair competition. *See Binary Semantics Ltd. v. Minitab, Inc.*, No. 07-1750, 2008 WL 763575, at *13 (M.D. Pa. Mar. 20, 2008) (finding that underlying torts of conversion and misappropriation of trade secrets support civil conspiracy); *Ideal Aerosmith*, 2008 WL 1859811, at *6 (finding that unfair competition and misappropriation of trade secrets support civil conspiracy).

Defendants argue that Plaintiff fails to allege that the "*sole* purpose of the conspiracy was to injure" Plaintiff. *See Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 419 (E.D. Pa. 2009) (citations omitted). Instead, Plaintiff only alleges that Defendants sought to create another business entity. *See Thompson Coal*, 412 A.2d at 472 (finding conspiracy claim foreclosed where a person acted solely to advance the legitimate business interests of his client and to advance his own interests); *Bro-Tech Corp*, 651 F. Supp. at 419 (finding the intent to injure requirement "negated by a showing that the acts alleged were done for professional or business benefit"); *Spitzer v. Abdelhak*, No. 98-6475, 1999 WL 1204352, at *9 (E.D. Pa. Dec. 15, 1999) ("As Plaintiffs have stated elsewhere, the Defendant's purpose of the conspiracy was to benefit themselves personally and professionally. The fact that it may have been necessary to deceive Plaintiffs in order to carry out their scheme in no way indicates that they acted with malice solely to injure Plaintiffs.").

We reject Defendants' argument that Plaintiff fails to plead malice. Plaintiff alleges that Defendants misappropriated its trade secrets "for the purpose of interfering with [Plaintiff's]

19

existing and potential contractual and business relations and sales" and that such actions were taken "with the intent to harm [Plaintiff]."  (Compl. ¶¶ 60, 67.)  Plaintiff alleges that Defendants sought to injure Plaintiff by communicating with Bou-Matic about Plaintiff's confidential information, and by submitting a business plan to Bou-Matic containing references to Plaintiff's trade secrets.  We find that Plaintiff sufficiently alleges malice or intent to injure.  *See Binary Semantics*, 2008 WL 763575, at *13; *see also Ideal Aerosmith*, 2008 WL 1859811, at *6 ("Defendants have failed to cite any case law dismissing conspiracy claims in the face of valid claims under PUTSA.").

Accordingly, we will deny Defendants' Motion to Dismiss Plaintiff's civil conspiracy claim.

## IV. CONCLUSION

For all of these reasons, Defendants' Motion to Dismiss is granted in part and denied in part.

An appropriate Order follows.

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**
